UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PAUL DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:07-CV-25 JVB |
| ) | |
| SUBARU OF INDIANA ) | |
| AUTOMOTIVE, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On February 3, 2006, Defendant Subaru of Indiana Automotive, Inc, terminated Plaintiff Paul Davis. Plaintiff sued Defendant for violation of the Americans with Disabilities Act, Age Discrimination in Employment Act, and the Family and Medical Leave Act ("FMLA"). Plaintiff has since dismissed his Americans with Disabilities Act claim and his Age Discrimination in Employment Act claim while maintaining his FMLA claim.

The Defendant moved to dismiss this case in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1 to which the Plaintiff objected.[1] Having reviewed the parties' briefs and accompanying materials, the Court now grants the Defendant's motion.

**A.    Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[1] Defendant's Memorandum in Support of Motion for Summary Judgment is 34 pages in length. Local Rule 7.1 mandates a maximum of 25 pages for such memorandum unless a Motion for Leave to File Excess Pages is granted, but Plaintiff did not object to this violation. In any case, the Court does not find the error material, although it does expect the compliance with Local Rule 7.1 in the future.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Factual Allegations**

Davis began working for Subaru around June 1996.  Davis took three FMLA leaves in 2005 in accordance with Subaru's Short-Term Disability policy, which provided:

**Leaves of Absences**

Currently, SIA has two types of leaves of absence for Associates—non-occupational medical leave and personal leave. (SIA also provides leaves of absence in accordance with the Family and Medical Leave Act).

**Non-occupational Medical Leave of Absence**—You may make application for a leave for a non-occupational illness or injury consistent with the Company's Short-Term Disability Program and the following requirements:
. . .
(7)     An Associate may not accept gainful employment during a non-occupational medical leave of absence if such employment occurs during the Associate's normal working hours at SIA, or, if the employment would be in violation of the Associate's medical restrictions. Any Associate who accepts such gainful employment will be considered to have voluntarily resigned. Exceptions to these guidelines may only be granted by the Vice President – Human Resources & Corporate Affairs and General Counsel.[2]

On December 14, 2005, Davis requested a one month FMLA leave to have surgery on his left wrist.  At the time of this requested leave, Davis was working the first shift in Subaru's Chassis Section; the shift was scheduled from 6:00 a.m. to 2:30 p.m.  The physician wrote on Davis's leave request form "[Left] wrist tendonitis—ongoing . . . works on cars, ride motorcycles, drag race outside of work—states not work related."  (Def.'s Mem. Supp. Summ. J.

---

[2] The Associate Handbook was revised in January of 2006 while Davis was on non-occupational leave of absence and, while Davis did not receive this revision, the only change made to the policy was to replace the Subaru official authorized to grant exceptions from "Vice President – Human Resources & Corporate Affairs and General Counsel" to "Senior Vice President – Human Resources and Corporate Affairs."

Appendix A, Ex. 16.)  Davis stated that this was the first time he ever saw a doctor about his wrist but that his wrist had "always been catching and grabbing."  (*Id.*)  Following the grant of the one month work leave, Davis's physician submitted a statement on December 22, 2005, saying Davis was totally disabled from performing his job functions until at least February 6, 2006.

On January 9, 2006, Davis disclosed his medical restrictions on a Return to Work Questionnaire.  (Def.'s Mem. Supp. Summ. J. Appendix A, Ex. 19.)  The questionnaire, filled out by Davis's doctor and signed by Davis, stated Davis was not capable of performing physical work, including the specific motions and actions required for his position, at a regular and repeated pace.  (*Id.*)  The questionnaire also indicated that Davis would have difficulty returning to his position and he should not participate in physical activity or work.  (*Id.*)  Davis's doctor also provided Subaru with a Medical Restrictions form that stated Davis could lift up to 20 pounds for only 25% of his shift, push or pull up to 20 pounds for only 25% of his shift, repetitively move the wrist for only 25% of his shift, and use vibratory tools for only 25% of his shift.  (Def.'s Mem. Supp. Summ. J. Appendix A, Ex. 18-19.)  All restrictions were to be lifted on February 6, 2006.  (Def.'s Mem. Supp. Summ. J. Appendix A, Ex. 18.)  Given these medical restrictions, Subaru determined that it had no work available for Davis and he was to remain on FMLA/Short-term disability leave until the restrictions were lifted.

In mid-January 2006, Rick Johnson, Specialist in Associate Relations, received two anonymous voice mail messages from individuals reporting Davis was selling auto parts while on medical leave.  Johnson hired a private investigation firm, J.A.W.S. Detective Agency, to investigate Davis's activity.  After the investigation, J.A.W.S. provided Johnson with a written

4

statement prepared by two private investigators that validated the anonymous reports.

Russell Gorbett, the first investigator, provided Subaru with a written report stating Gorbett went to Davis's home on January 17, 2006, to look at a 1976 Chevy Blazer and Davis told him that he would accept either $1,500 or a trade of Mopar auto parts for it. (Def.'s Mem. Supp. Summ. J. Appendix D, Ex. 1.) On January 25, 2006, after unsuccessful attempts to meet with Davis on January 19, 23, and 24, Gorbett called Davis on his cell phone and Davis explained that he was "pretty busy with his e-bay business, running to the post office several times a day." (*Id.*) On that same phone call, Davis told Gorbett that he had recently sold four complete motors, and he was selling another one for $600. (*Id.*) Finally on January 26, 2006, Gorbett went to Davis's home and purchased a carburetor for $40. (*Id.*)

Joel Hargett, the second investigator, provided Subaru with a report stating Hargett had visited Davis's home on Monday, January 30, 2006, where Davis sold him a distributor shaft and an alternator for $15 each. (Def.'s Mem. Supp. Summ. J. Appendix E, Ex. 1.) During this transaction, Davis told Hargett that he had sold over 100 items on the internet and Davis asked Hargett if he knew anyone that was looking to purchase a rear end gear ratio that he was selling on eBay for $400.[3] (*Id.*) Finally, Davis provided Hargett with two business cards and his e-mail address for further transactions. (*Id.*) Hargett also provided eBay documentation about Davis who used the seller name "392hemi0." (*Id.*)

Johnson and Subaru Associate Relations Manager Kent Tolliver agreed the evidence established that Davis was engaged in gainful employment during his normal working hours

---

[3] While it is not disputed that the statement was in the report, it is disputed whether Davis actually made the statement to Hargett that he had sold over 100 items. (Def.'s Mem. Supp. Summ. J. Appendix E, Ex. 1.)

5

while on non-occupational leave.  Tolliver reported these findings to Subaru's Senior Vice President—Human Resources and Corporate Affairs, Thomas Easterday, who agreed with the assessment and informed Davis that Subaru would consider his activities as a voluntarily resignation for engaging in gainful employment while on non-occupational medical leave if he did not present information indicating the reports were false.

Tolliver, Johnson, Davis, and Woody Palmer, the Associate Relations Representative, met on February 2, 2006, where Davis was told that Subaru had received reports he was selling automotive parts while on medical leave of absence.  Davis admitted he bought and sold auto parts and acknowledged he conducted these activities at all times of the day and night.  Davis further stated he had business cards for his activity and he owned the business cards for the past seven years.  Davis told Subaru he sold auto parts both online and in person and that he had sold a distributor and alternator at his home a few days prior.  Davis further acknowledged that he bought and sold auto parts while on medical leave of absence.  Davis told Tolliver, Johnson, and Palmer that he did not consider buying, selling, and trading auto parts to be gainful employment.

Tolliver concluded that Davis had violated Subaru's policy against accepting gainful employment and gave Davis a letter, which stated that Davis's conduct violated of the Subaru policy and that Subaru considered him voluntarily resigned from his employment effective immediately.

**B.     Discussion**

The Defendant contends that Plaintiff fails to make a prima facie case for the violation of FMLA.  The Defendant argues that Plaintiff mistakenly focuses on the accuracy of Subaru's

determination rather than the honesty of Subaru's belief that Davis had accepted gainful employment while on a non-occupational medical leave of absence.

The Plaintiff, on the other hand, contends that Subaru could not have had an honest belief that Davis had accepted gainful employment given the evidence Subaru was presented.  This assertion fails because Plaintiff argues the accuracy of Subaru's assessment rather than the honesty of its belief.  The legal standard is whether Subaru had an honest belief and, since no evidence has been presented that could show Subaru did not have an honest belief, Plaintiff fails to make a prima facie case.

**(1)**   *Prima Facie Case*

The FMLA entitles eligible employees "to a total of 12 workweeks of leave" for "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  After the employee returns from the leave, the employee is entitled to be restored by the employer to his former position with the same benefits he had when he left.  29 U.S.C. § 2614(a)(1)(A), 2614(a)(2).  The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, this right.  29 U.S.C. § 2615(a)(1).

The FMLA permits a claim for wrongful termination to be brought under either a discrimination/retaliation or interference/entitlement theory. *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).  Davis is continuing under the interference/entitlement theory.  The plaintiff must show that he is an "eligible employee" to pursue an interference/entitlement claim.  29 U.S.C. § 2611(2).  Furthermore, the plaintiff must show he took the leave "for the

intended purpose of the leave" and the employer then denied a benefit "as a result of the leave." 29 U.S.C. § 2614(a)(1), 2614(a)(3), 2615(a)(1).  If this can be shown, an interference/entitlement theory claim "requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman*, 426 F.3d at 884.

However, "an employer can defeat an interference claim by showing, among other things, that the employee did not take leave 'for the intended purpose.'" *Vail v. Raybestos Products Co.*, No. 07-3621, 2008 WL 2791672, at *4 (7th Cir. July 21, 2008) (citing *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006)).  The Seventh Circuit has interpreted this standard to mean that "an employer has not violated the FMLA if it refused to reinstate the employee based on an 'honest suspicion' that [the employer] was abusing [his] leave." *Id.* (citing *Crouch*, 447 F.3d at 986; *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680—681 (7th Cir. 1997)).  This principle is derived from the fact that "the employee only gets the same employment terms [the employee] had when [the employee] left—nothing more."  *Id.*  "Aside from the twelve weeks of leave, it does not confer 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Id.* (citing *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997)).

The present case is analogous to the recently decided *Vail v. Raybestos Products Co.*  No. 07-3621, 2008 WL 2791672, (7th Cir. July 21, 2008).  In *Vail*, the plaintiff was employed under a collective bargaining agreement that forbade "accept[ing] and perform[ing] other gainful employment." *Id.* at *2.  The plaintiff worked a shift for the defendant, a manufacturer of car parts, and received approved leave for migraines that occurred on short notice. *Id.* at *1.  As the

8

requests became more frequent, the defendant began suspecting that these absences were being taken to allow the plaintiff to assist her husband's lawn-mowing service. *Id.* The defendant hired a private investigator to monitor the plaintiff's activities and the investigator reported having seen the plaintiff fill up two lawn mowers and cut a cemetery's lawn. *Id.*

In her FMLA claim, the plaintiff contended in *Vail* that the termination interfered with her rights. *Id*. at *4. The Seventh Circuit found that the facts clearly showed that the defendant had an honest suspicion that the plaintiff was not using her leave for the intended purpose. *Id.* While the practice of hiring private investigators "may not be preferred employer behavior," the reconnaissance reinforced the suspicions the defendant already had and the determination to terminate the plaintiff arose from an honest suspicion. *Id.*

In the present case, Davis makes two contentions. First, he disputes the accuracy of the facts alleged by J.A.W.S. Detective Agency and upon which Subaru made its decision. Second, Davis asserts that Subaru could not have formed an honest suspicion given the evidence it had been provided.

So long as the defendant acted appropriately in relying upon the investigators, the accuracy of the written reports filed by J.A.W.S. is irrelevant. As indicated in *Vail*, the practice of hiring investigators, while not entirely desirable, is consistent with Seventh Circuit law. *Id.* In this case, there are no facts that would indicate Subaru should have questioned the validity or accuracy of the J.A.W.S. investigation. The investigation reports were consistent with anonymous callers' complaints and with each other.        Since the standard for evaluating the FMLA claim is whether the defendant had an honest suspicion, the fact that the information the defendant relied upon could possibly be incorrect is not relevant even if those facts lead to the

9

honest suspicion. All that is necessary to defeat an interference claim is an honest suspicion not an accurate determination and thus the accuracy of the reports is moot.

Moreover, this information is sufficient to give Subaru an honest suspicion that Davis had not used his leave for the intended purpose. After receiving two anonymous phone calls claiming Davis was buying and selling auto parts while on FMLA leave, two detectives provided written reports validating the phone calls. In these written statements, Gorbett stated he met with Davis and discussed buying or trading auto parts for a 1976 Chevy Blazer. Davis also claimed he had been unable to meet with Gorbett on multiple occasions because he was too busy with his eBay activities and presented Hargett with business cards and an e-mail address for future transactions. Further, Davis claimed to have sold four complete motors. He also notified Gorbett and Hargett respectively that he was selling another motor for $600 and a rear end gear ratio for $400. He ultimately sold the investigators a carburetor, distributor shaft, and an alternator.

Johnson and Tolliver reviewed the reports and determined the behavior violated Subaru's Short-Term Disability policy. Johnson and Tolliver provided the findings to Easterday and he concurred. Finally, Johnson, Tolliver, and Palmer held a meeting with Davis to discuss the reports. In this meeting, Davis told Subaru he bought and sold auto parts at all times of the day and night both online and in person. Davis also acknowledged he had business cards to further his endeavor and that he had bought and sold auto parts while on medical leave of absence. After allowing him to explain his activities, Subaru still came to the conclusion that Davis had violated the policy.

Subaru relied on evidence provided by anonymous phone calls, two investigators, and

admissions by Davis.  In so doing, it arrived at the conclusion that Davis had not used his medical leave of absence for its intended purpose and that he had violated Subaru's Short-Term Disability Policy.  No evidence has been presented that Subaru did not have an honest suspicion that Davis had violated his medical leave of absence; the Court is only provided arguments that the evidence Subaru relied upon was not relevant or convincing.  Subaru has thus made a clear showing that it had an honest suspicion.  Because Subaru has demonstrated an honest suspicion, Subaru did not violate Davis's rights under the FMLA.

**C.**     **Conclusion**

For this reason, the Court grants the Defendants' Motion for Summary Judgment.

SO ORDERED on August 8, 2008.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
HAMMOND DIVISION

11